METROPOLITAN TRANSIT AUTHORITY, Appellant,

v.

MEB ENGINEERING, INC., Appellee.

No. 01–04–00022–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 15, 2004.

Randy Frazier Jr., Houston, TX, for Appellant.

David W. Hodges, Galvin B. Kennedy, Kennedy Hodges, PLLC, Houston, TX, for Appellee.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

The Metropolitan Transit Authority (METRO) appeals the denial of its plea to the jurisdiction relating to a breach of contract claim against METRO brought by MEB Engineering, Inc. (MEB). Of the two points of error presented by METRO, the dispositive issue that we address is whether section 451.054 of the Transportation Code waives METRO's immunity from suit. We affirm.

### Background

In its original petition, MEB alleged that, as a general contractor, it entered into three construction contracts with METRO. MEB further alleged that, during its performance of the contracts, MEB performed "extra work" for METRO and suffered delays due to METRO's failures to plan properly in advance of the con-

struction projects. MEB sued METRO for breach of contract, quantum meruit, and fraud, seeking more than $1.5 million in damages.

METRO counterclaimed, alleging that it was contractually entitled to liquidated damages from MEB for the delay in completing the contracts. METRO alleged breach of contract and breach of warranty claims against MEB, seeking more than $400,000 in damages, plus attorney's fees.

METRO, then, filed a plea to the jurisdiction, asserting that it was immune from suit as a governmental unit.[1] MEB responded that the "sue and be sued" language in the Transportation Code, section 451.054 waives METRO's immunity from suit. The trial court dismissed MEB's quantum meruit and fraud causes of action, but denied METRO's plea to the jurisdiction with respect to MEB's breach of contract claim.

In two points of error, METRO argues that the "sue and be sued" language in the Transportation Code does not waive its governmental immunity from suit and that MEB failed to allege any other express waiver of immunity that would invoke the trial court's jurisdiction.

### Standard and Scope of Review

■ Subject-matter jurisdiction is essential for a court to have the authority to resolve a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A party may challenge a court's subject matter jurisdiction by filing a plea to the jurisdiction. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex.1999). As a question of law, we review de novo the trial court's ruling on such a plea. *Mayhew v. Town of Sunny-*

vale, 964 S.W.2d 922, 928 (Tex.1998). In conducting this de novo review, we do not look at the merits of the plaintiff's case, but consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). We construe the pleadings liberally in favor of conferring jurisdiction. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex.2002).

### Waiver of Immunity

■ Governmental immunity encompasses two principles: (1) immunity from suit (barring a lawsuit unless the legislature expressly gives its consent to suit) and (2) immunity from liability (protection from judgments even if the legislature has expressly given its consent to suit). *Travis County v. Pelzel & Assocs.*, 77 S.W.3d 246, 248 (Tex.2002). Immunity from liability does not affect a court's subject-matter jurisdiction. *Jones*, 8 S.W.3d at 638. In contrast, even if liability is undisputed, immunity from suit deprives a trial court of subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Id.*

■ When a governmental entity contracts with a private party, as METRO has done here, it is liable on its contracts as if it were a private party. *See Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex.2001). Therefore, by contracting with MEB, METRO waived its immunity from liability. However, a governmental entity does not waive immunity from suit simply by contracting with a private party. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 (Tex.1997) *superseded*

---

**1.** METRO is a "governmental unit," a "public political entity and corporate body [that] exercises public and essential government functions." Tex. Transp. Code Ann. § 451.052(a),

(c) (Vernon 1999); *City of Houston v. Todd*, 41 S.W.3d 289, 295 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

*by statute on other grounds as stated in Little–Tex Insulation Co.*, 39 S.W.3d at 593; *Dillard v. Austin Indep. Sch. Dist.*, 806 S.W.2d 589, 592 (Tex.App.-Austin 1991, writ denied). Express consent is required to show that immunity from suit has been waived. *Fed. Sign*, 951 S.W.2d at 408.

■■■ A party may establish consent to suit by statute or legislative resolution. *Little–Tex*, 39 S.W.3d at 594. Such consent must be expressed by "clear and unambiguous language." TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp.2004); *Fed. Sign*, 951 S.W.2d at 405. Accordingly, we must determine whether the legislature has, by clear and unambiguous language in Transportation Code section 451.054, waived METRO's immunity from suit. *See City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995) (stating that clear-and-unambiguous requirement for waiving immunity applies to governmental entities other than the state).

Texas Transportation Code section 451.054 (entitled "General Powers of Authority"[2]) provides, in relevant part, as follows:

> (c) *An authority may sue and be sued.* An authority may not be required to give security for costs in a suit brought or prosecuted by the authority and may not be required to give a supersedeas or cost bond in an appeal of a judgment.

TEX. TRANSP. CODE ANN. § 451.054 (Vernon 1999) (emphasis added).

MEB contends that the "sue or be sued" language in 451.054(c) constitutes a waiver of METRO's immunity from suit. METRO, however, argues that this language simply denotes its capacity to utilize the courts and does not waive its immunity from suit.

In *Missouri Pacific Railroad Company v. Brownsville Navigation District*, the Texas Supreme Court faced a similar question. 453 S.W.2d 812 (Tex.1970). The court was asked to interpret the "sue and be sued" language found in section 46 of article 8263h, a 1925 statute that authorized the creation of the Brownsville Navigation District of Cameron County, Texas. *Id.* The statute in question provided as follows: "All navigation districts established under this Act may, by and through the navigation and canal commissioners, *sue and be sued* in all courts of this State in the name of such navigation district, and all courts of this State shall take judicial notice of the establishment of all districts." *Id.* at 813 (emphasis added).

The *Missouri Pacific* case arose when a brakeman for Missouri Pacific Railroad died after being knocked from a train ladder by a crane that had been left too close to the track. *Id.* at 812–13. The brakeman's beneficiaries sued Missouri Pacific, which filed a cross-action for indemnity against Brownsville Navigation District. *Id.* The cross-action was based on a contract between Missouri Pacific and the navigation district that prohibited the district from allowing certain objects to be placed near the track. *Id.* The trial court granted the plea to the jurisdiction on the basis that the district was a subdivision of the State and that the consent to suit had not been given. *Id.* at 813. The court of civil appeals affirmed. *Id.* Reversing the court of appeals, the *Missouri Pacific* court addressed the issue of whether the "sue and be sued" language waived immunity from suit and concluded, "In our opinion [the navigation statute] is *quite plain*

---

**2.** Section 451.001 of the Code defines "authority" as "a rapid transit authority created under this chapter or under Chapter 141, Acts of the 63rd Legislature, Regular Session, 1973." METRO falls within this definition.

*and gives general consent for the District to be sued in the courts of Texas in the same manner as other defendants." Id.* (emphasis added).

▊ In its brief, METRO recognizes that, in *Missouri Pacific,* the Texas Supreme Court "held that a similar sue-and-be-sued provision waived the district's immunity from suit." It neglects to explain, however, why this Court is not bound by that authority in this case. As an intermediate court of appeals, we must follow our supreme court's expressions of the law and leave changes in the application of common-law rules to that higher authority. *See Lubbock County v. Trammel's Lubbock Bail Bonds,* 80 S.W.3d 580, 585 (Tex. 2002).

Moreover, this Court recently recognized that *Missouri Pacific* remains binding precedent when we held that the "sue and be sued" language in the City of Houston's charter waived its immunity from suit. *United Water Services, Inc. v. City of Houston,* 137 S.W.3d 747, 757 (Tex. App.-Houston [1st Dist.], pet. filed). In so doing, we joined the majority of the courts of appeals of our state in holding that "sue and be sued" provisions waive a governmental entity's immunity from suit. *See, e.g., Goerlitz v. City of Midland,* 101 S.W.3d 573, 577 (Tex.App.-El Paso 2003, pet. filed) (city charter provides that city may sue and be sued—immunity waived); *Tarrant Co. Hosp. Dist. v. Henry,* 52 S.W.3d 434, 448 (Tex.App.-Fort Worth 2001, no pet.) (Health and Safety Code provides that board of managers of hospital district may sue and be sued—immuni-

ty waived); *Welch v. Coca–Cola Enters.,* 36 S.W.3d 532, 538 (Tex.App.-Tyler 2000, pet. withdrawn) (Education Code provides that school district trustees may sue and be sued—immunity waived); *Bates v. Tex. State Tech. Coll.,* 983 S.W.2d 821, 827 (Tex. App.-Waco 1998, pet. denied) (Education Code provides that college board may sue or be sued—immunity waived); *Alamo Comm. Coll. Dist. v. Obayashi Corp.,* 980 S.W.2d 745, 747–48 (Tex.App.-San Antonio 1998, pet. denied) (Education Code provides that independent school district trustees may sue or be sued—immunity waived); *Dillard,* 806 S.W.2d at 594 (Education Code provides that school district trustees may sue and be sued—immunity waived); *but see Satterfield & Pontikes Constr., Inc. v. Irving Indep. Sch. Dist.,* 123 S.W.3d 63, 68 (Tex.App.-Dallas 2003, no pet.) (Education Code provides that school district trustees may sue and be sued—immunity *not* waived).[3]

Accordingly, we hold that section 451.054 of the Transportation Code clearly and unambiguously waives METRO's immunity from suit. We further hold that the trial court properly denied METRO's plea to the jurisdiction relating to MEB's breach of contract claim. We overrule METRO's first point of error.[4]

## CONCLUSION

We affirm the order of the trial court.

Justice HANKS, concurring.

GEORGE C. HANKS, JR., Justice, concurring.

I respectfully concur in the majority's opinion and judgment affirming the denial

---

3. In its brief, METRO relied on *City of Dallas v. Reata Constr. Corporation,* which was recently reversed by the Texas Supreme Court on other grounds. 83 S.W.3d 392, 393–94 (Tex.App.-Dallas 2003), *rev'd on other grounds,* —— S.W.3d ——, 2004 WL 726906, No. 02-1031, 47 Tex. Sup.Ct. J. 408 (Tex. April 2, 2004).

4. Having held that the "sue and be sued" language in the Transportation Code waives immunity from suit, we need not address METRO's only other point of error that MEB failed to allege any other express waiver of immunity.

of METRO's plea to the jurisdiction. In light of the Texas Supreme Court's recent opinion in *Reata Construction Corporation v. City of Dallas*, —— S.W.3d ——, 47 Tex. Sup.Ct. J. 408, 2004 WL 726906 (Tex. April 2, 2004), it is not necessary to address either the merits of the case or the implication of the "sue and be sued" language found in the Texas Transportation Code.

The holding in *Reata* governs the resolution of the jurisdictional question presented on appeal because the key procedural facts in *Reata* are analogous to the facts presented here. In *Reata*, Southwest Properties Group, Inc. (Southwest) sued Dynamic Cable Construction Company, Inc. (Dynamic) and its subcontractor, Reata Construction Company (Reata), for negligence after Reata inadvertently drilled into a 30–inch water main while attempting to install fiber optic cable in downtown Dallas. *Id.* The damaged water main flooded a nearby residential building owned by Southwest.

Reata filed a third-party claim against the City of Dallas (the City), alleging that the damages were caused by the City's misidentification of the water main location. In response, the City (1) filed special exceptions asserting that Reata's claims were not within the Texas Tort Claims Act's waiver of immunity; (2) intervened in the lawsuit between Southwest, Dynamic, and Reata, asserting claims against Dynamic; and (3) filed a second amended "plea in intervention," asserting a claim of negligence *against* Reata related to the flooding and seeking actual damages, pre- and post-judgment interest, costs, and "any other relief at law and equity to

which it may be entitled."[1] *Id.* The City then filed a plea to the jurisdiction asserting governmental immunity from suit with regard to Reata's claims against it. The trial court denied the plea, and the Dallas Court of Appeals reversed the trial court and dismissed Reata's claims against the City. *City of Dallas v. Reata Constr. Corp.*, 83 S.W.3d 392 (Tex.App.-Dallas 2002).

The Texas Supreme Court reversed the appellate court and held that, "to the extent the City enjoyed governmental immunity from suit with regard to Reata's claims, the City waived that immunity by intervening in the lawsuit and *asserting claims for damages against Reata*." *Reata*, at ——, 47 Tex. Sup.Ct. J. at 409 (emphasis added). The court further held that, "*by filing a suit for damages*, a governmental entity waives immunity from suit for any claim that is incident to, connected with, arises out of, or is germane to the suit or controversy brought by the State." *Id.* (emphasis added). The court concluded by holding that, "when the City filed its plea in intervention against Reata, it subjected itself to the jurisdiction of the trial court and waived its governmental immunity from suit with regard to Reata's claims germane to the matter in controversy." *Id.* at ——, at 410 (citing *State v. Martin*, 347 S.W.2d 809, 814 (Tex.Civ. App.-Austin 1961, writ ref'd n.r.e.)).

In this case, we have an analogous procedural situation. METRO, like the City in *Reata*, voluntarily filed a suit for damages against a party in the form of a counterclaim and then attempted to claim immunity.[2] *See id.* at ——, at 408. Fur-

---

**1.** In *Reata*, there was no explanation given as to why the City's claim was characterized as a "plea in intervention" instead of a counterclaim. Reata sued the City, and the City, as a defendant, countered by suing Reata. As a third party defendant, the City did not need to

intervene in the lawsuit between Southwest, Dynamic and Reata to be able to sue Reata.

**2.** METRO suggested during oral argument that *Reata* was not instructive because the governmental entity in *Reata* filed a plea in intervention, whereas, here, METRO filed a

thermore, like the City in *Reata,* MET-RO's claims were incident to, connected with, arose out of, or were germane to the suit brought against it. *See id.* at ——, at 410. Here, MEB sued METRO for damages as a result of extra work it performed for METRO. METRO then counterclaimed, alleging that, due to MEB's delay in completing the contracts, METRO was entitled to more than $400,000 in damages, plus attorneys' fees for MEB's alleged breach of contract and breach of warranty.[3]

Accordingly, when METRO filed its counterclaim, "it subjected itself to the jurisdiction of the trial court and waived its governmental immunity from suit with regard to [MEB's] claims germane to the matter in controversy." *See id.* Thus, the trial court did not err in rejecting METRO's challenge to the court's jurisdiction.

## CONCLUSION

For these reasons, I respectfully concur.

counterclaim. I disagree with this suggested distinction because, in the context of waivers of immunity, there is no difference. Regardless of the nomenclature of the action, both filings (1) voluntarily seek the trial court's jurisdiction and affirmative relief from the court and (2) survive the dismissal of the original claim. Furthermore, as noted above, although styled as a second amended plea in intervention, the action brought by the City against Reata in *Reata* was, in fact, a counterclaim—just like METRO's claim in this lawsuit—and not an intervention.

3. METRO asserted during oral argument that this counterclaim was merely a "defensive offset." If METRO's counterclaim was, in fact, an offset, it was improperly pleaded. The right to offset one claim against another claim is an affirmative defense, not a claim for affirmative relief. *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 470 (Tex.1995); *Sugar Land Props., Inc. v. Becnel,* 26 S.W.3d 113, 121 (Tex.App.-Houston [1st Dist.] 2000, no pet.).